1 │ NICOLE U. RINKE (Cal. Bar. No. 257510)
    │ TAHOE REGIONAL PLANNING AGENCY
2 │ P.O. BOX 5310
    │ Stateline, Nevada 89448
3 │ Tel: (775) 588-4547
    │ Fax: (775) 588-4527
4 │ nrinke@trpa.org
    │ (Counsel for service purposes)
5 │
    │ JOHN L. MARSHALL (Cal. Bar. No. 145570)
6 │ 570 Marsh Avenue
    │ Reno, Nevada 89509
7 │ Tel: (775) 322-5668
    │ Fax: (775) 201-0193
8 │ johnmarshall@charter.net
9 │ Attorneys for Defendant
    │ Tahoe Regional Planning Agency
10 │

11 │                        UNITED STATES DISTRICT COURT

12 │                        EASTERN DISTRICT OF CALIFORNIA

13 │
    │ LEAGUE TO SAVE LAKE TAHOE, et al.    )   Case No.: 2:08 CV 2447   JAM
14 │                                      )
    │              Plaintiffs,            )
15 │                                      )
    │              vs.                    )   STIPULATION FOR VOLUNTARY
16 │                                      )   DISMISSAL WITH PREJUDICE
    │ TAHOE REGIONAL PLANNING AGENCY, )
17 │ et al.,                              )
    │                                      )
18 │              Defendants.            )
    │                                      )
19 │                                      )
    │ _____)
20 │

21 │         Pursuant to Fed. R. Civ. Proc. 41(a)(2), the parties to this litigation, Plaintiff League to

22 │ Save Lake Tahoe ("League"), Plaintiffs Friends of Tahoe Vista ("Friends"), Defendant Tahoe

23 │ Regional Planning Agency ("TRPA"), Defendant Tahoe Vista Partners ("TVP") and Defendant

24 │

Stipulation for Dismissal                                                    1

1  Board of Supervisors of the County of Placer ("Placer County") hereby file this stipulation to

2  dismiss this action with prejudice.

3          1.      The Tahoe Vista Partners Affordable Housing and Interval Ownership

4  Development Project (the "Project") was approved by TRPA on July 23, 2008, and by Placer

5  County on October 20, 2008.  The Project site currently consists of a campground resort,

6  restaurant, and associated buildings.  The Project would convert the existing campground/RV

7  park into a timeshare resort with up to 39 market rate timeshare units, six affordable housing

8  units, a clubhouse and related structures.

9          2.      On October 14, 2008, Plaintiffs filed suit against TRPA and TVP alleging that

10  TRPA's approval of the Project violated the Tahoe Regional Planning Compact ("Compact")

11  (Pub. Law 96-551) and implementing Code of Ordinances in various respects.  On December 18,

12  2008, Plaintiffs filed a First Amended Complaint including a claim that TRPA recognized too

13  much land coverage on the Project site when it approved the Project in July 2008.

14          3.      On April 20, 2009, Plaintiffs filed a Second Amended Complaint adding Placer

15  County as a defendant and challenging Placer County's approval of the its permit for the Project

16  under the California Environmental Quality Act ("CEQA") (Cal. Pub. Resources Code, § 21000

17  et seq.).  On October 29, 2009, the Plaintiffs filed a Third Amended Complaint as against all

18  defendants.

19          4.      All defendants have appeared and filed answers to the complaints.

20          5.      In early 2010, the parties negotiated a tentative Settlement Agreement to resolve

21  their disputes over the Project.  The parties agreed that the Settlement Agreement would become

22  effective after TRPA and Placer County processed and approved certain amendments to the

23  permits for the Project and the expiration of the applicable statute of limitations period with

24

1 | further litigation being filed.  A copy of the Settlement Agreement is attached hereto as Exhibit
2 | A.

3 |      6.     In order to facilitate the parties' efforts to render the Settlement Agreement
4 | effective, this Court has stayed this litigation until March 31, 2011.

5 |      7.     In March 2010, TRPA approved an amendment to its TVP permit in satisfaction
6 | of its obligation under the Settlement Agreement.  The 60-day limitations period under the
7 | Compact expired without the filing of any challenge to TRPA's action.

8 |      8.     On December 9, 2010, Placer County approved an amendment to its TVP permit
9 | in satisfaction of its obligation under the Settlement Agreement.  The 90-day limitations period
10 | under applicable law expired without the filing of any challenge to Placer County's action.

11 |      9.     Pursuant to its terms, the Settlement Agreement became effective on March 10,
12 | 2011 as all preconditions have been satisfied and all applicable limitations periods have expired
13 | without further legal challenge.

14 |      10.     Paragraph IV(D)(5)(d) of the Settlement Agreement requires that Plaintiffs shall
15 | seek dismissal of this action with 10 days of the effective date of the Settlement Agreement, or
16 | by March 20, 2011.

17 |      11.     Given that the Settlement Agreement has become effective, all parties hereby
18 | stipulate to the dismissal of this action with prejudice.

19 |      11.     The permit and amendment issued by TRPA for the TVP Project and signed by
20 | TVP obligates TVP to pay TRPA all sums of money owed TRPA within 10 days of the effective
21 | date of the Settlement Agreement.  As of February 25, 2011, TVP owed TRPA approximately
22 | $188,635.03 with additional costs and interest continuing to be incurred.  TVP has represented to
23 | TRPA that is will secure financing for the Project by April 22, 2011.  Should TVP fail to pay
24 |

Stipulation for Dismissal       3

1  TRPA all moneys owed to TRPA by April 29, 2011, TRPA may seek enforcement of TVP's

2  payment obligation pursuant to this paragraph in this Court and shall be awarded reasonable

3  attorney's fees and costs incurred in that effort.

4      12.    This Stipulation may be executed in counterparts, including facsimile

5  counterparts, each of which when so executed shall be deemed to be an original.

6      IT IS SO STIPULATED.

7  DATED:  March 21, 2011.

8          **LOZEAU DRURY LLP**

9

10      By:    _____/s/_____

11      Richard Drury
    Attorneys for Plaintiff League to Save Lake

12      Tahoe

13          **KENYON YEATES LLP**

14

15      By:    _____/s/_____

16      Bill Yeates
    Attorneys for Plaintiff Friends of Tahoe

17      Vista

18          **LANAHAN & REILLEY LLP**

19

20      By:    _____/s/_____

21      Robert Anderson
    Attorneys for Defendant Tahoe Vista

22      Partners, LLC

23

24

Stipulation for Dismissal        4

1   **TAHOE REGIONAL PLANNING AGENCY**

2

3   By:         _____/s/_____
               Nicole Rinke
4               John L. Marshall
               Attorneys for Defendant Tahoe Regional
5               Planning Agency

6   **COUNTY OF PLACER**

7

8   By:         _____/s/_____
               Scott Finley
9               Attorneys for Defendants County of Placer
               and Board of Supervisors of the County of
               Placer
10

11

12   **ORDER**

13   The Court having read the considered the foregoing Stipulation, and good cause

14   appearing, this action is hereby dismissed with prejudice, this 22nd day of March, 2011.

15

16

17   Honorable John A. Mendez
     United States District Judge

18

19

20

21

22

23

24

# EXHIBIT A

# EXHIBIT A

## I. SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and among TAHOE VISTA PARTNERS, LLC ("TVP"), a California limited liability company; the LEAGUE TO SAVE LAKE TAHOE ("League"), a California non-profit corporation; FRIENDS OF TAHOE VISTA ("Friends"), an unincorporated association, the TAHOE REGIONAL PLANNING AGENCY ("TRPA"), and the BOARD OF SUPERVISORS OF THE COUNTY OF PLACER and the COUNTY OF PLACER ("County"). The parties hereto are TVP, the League, the Friends, TRPA, and the County and may be collectively referred to as the "Parties" and individually as a "Party."

## II. DEFINITIONS

For purposes of this Agreement, the terms listed below are defined as follows:

1.    "Action" means the lawsuit entitled *League to Save Lake Tahoe, et al. v. Tahoe Regional Planning Agency, et al.* in the United States District Court for the Eastern District of California (Civ. No. 2:08-CV-2447 JAM/KJM).

2.    "Agate Bay Hydrologic Transfer Area" means the Agate Bay hydrologic area, as defined in Chapter 20 of the TRPA code with overlay map on file at TRPA.

3.    "Bailey Coefficient," has the meaning defined in Chapter 2 of the Code.

4.    "CEQA" means the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.).

5.    "Code" means the Tahoe Regional Planning Agency's Code of Ordinances.

6.    "Compact" means the Tahoe Regional Planning Compact, as amended.

7.    "Complaint" means the "Verified Third Amended Complaint for Declaratory and Injunctive Relief; And Related Pendant State Law Petition for Writ of Mandate" filed by the Plaintiffs on or about October 29, 2009, in this Action.

8.    "County" means, collectively, the County of Placer and Board of Supervisors for the County of Placer.

9.    "Coverage" means Land Coverage, which has the meaning defined in Chapter 2 of the Code.

10.    "CTRPA" means the California Tahoe Regional Planning Agency.

11.    "Effective Date" means the date this Agreement takes effect. The Effective Date shall be the later of the following two dates: (a) the sixty-first (61st) day following TRPA's approval of a modification to the permit for the TVP Project limiting existing Land Coverage for the Project to 125,000 sf, and other changes to the permit required by this Agreement, if no legal challenge is filed contesting the Governing Board's approval of the

permit modifications; or (b) the ninety-first (91st) day following the County's approval of a modification to Condition of Approval No. 74 of the permit for the TVP Project to require that the Revised Project satisfy its affordable housing obligation through a condition that affordable housing units be located within the existing housing stock rather than on site and any other changes required by this Agreement, if no legal challenge is filed contesting the County's approval of the modifications to the permit. If a legal action is filed within the sixty (60) day or ninety (90) day limitations period for challenging TRPA's or the County's approval of the permit modification, respectively, discussed in the preceding sentence by any person, organization, or entity other than the Parties, this Agreement will not take effect.

12.     "Friends" means Friends of Tahoe Vista, its officers, directors, members, consultant, agents, successors and assigns, including but not limited to the following persons:  Laurie Gregory, Gary Kaufman, Leah Kaufman, Barbara Haas, Mark Haas, Fran Robinson, Alvina Patterson, Trudi Lesem, Gwen Rosser, Ellie Waller, Dale Chamblin, Pam Chamblin, Ezra Meyer, Janet Harley, Meera Beser, Dave McClure, Janet Tuttle, Cindy Curran and Kathy Uskert.

13.     "Governing Board" means the TRPA Governing Board.

14.     "Haas property" means APN 112-060-023-000 located at 6910 Toyon Road, Tahoe Vista, Placer County, California.

15.     "League" means League to Save Lake Tahoe, and its officers, directors, employees, agents, successors and assigns.

16.     "Land Coverage" has the meaning defined in Chapter 2 of the Code.

17.     "NEPA" means the National Environmental Policy Act.

18.     "Physical Construction Activities" means any construction activities that result in permanently covering land, including but not limited to grading, pavement, structures, tree removal, or similar construction activities that are not designed to be temporary.  Physical Construction Activities specifically does not include demolition, or similar activities that are not designed to permanently cover land.

19.     "Plaintiffs" means, collectively, the League and Friends, except for Leah Kaufman, who was an unpaid consultant for Friends.  Nevertheless, Leah Kaufman as the Friends' consultant, while not an actual Plaintiff, is included within the definition of Plaintiffs for purposes of this Agreement only and is entitled to all the benefits and incurs all obligations of this Agreement.

20.     "Project" means the TVP Affordable Housing and Interval Ownership Development Project approved by the TRPA on July 23, 2008, and by the County on October 20, 2008, to be located at 6873 North Lake Blvd., Placer County, California. The decision of TRPA and the County is the subject of the Action and this Agreement.

21.     "Project site" means the approximately 6.25 acres (+/- 272,303 sf), of real property designated by the Assessor Parcel Number (APN) 117-071-02 and located at 6873 North Lake Blvd., Placer County, California.

22.     "Revised Project" means the Project as modified by TVP consistent with the terms of this Agreement.

23.     "sf" means square feet.

24.     "TRPA" means the Tahoe Regional Planning Agency, including its officers, directors, governing board members, employees, and agents.

25.     "TVP" means Tahoe Vista Partners, LLC, and its officers, directors, shareholders, successors and assigns. Joe Lanza and Rafe Miller, as landowners of the Project site, are included within the definition of TVP for purposes of this Agreement only and are entitled to all the benefits and incur all obligations of this Agreement.

26.

## III.     RECITALS

A.     The Project was approved by the TRPA on July 23, 2008, and by the County on October 20, 2008. The Project site is 272,303 square feet ("sf"), or approximately 6.25 acres. The site currently consists of a campground resort, restaurant, and associated buildings. The Project, as approved by TRPA on July 23, 2008 and by the County on October 20, 2008, would convert the existing campground/RV park into a timeshare resort with up to 39 market rate timeshare units, six affordable housing units, a clubhouse and related structures.

B.     TRPA regulates land coverage as a means of achieving its environmental objectives. The TRPA Code of Ordinances defines land coverage and limits the amount of permissible land coverage on a site, based on slope, soil characteristics, historic use of the site, and other factors. (TRPA Code, chapter 20.)

C.     The Governing Board's July 23, 2008 approval of the Project recognized 174,324 sf of coverage as legally existing on the site, including 92,633 square feet in excess of the Bailey Coefficient for the site.

D.     The action of the Governing Board was based on a site inspection conducted in 2002 that determined that 174,324 sf of coverage was present on the site at that time.

E.      After the Governing Board approved the Project, on October 14, 2008, Plaintiffs filed suit against TRPA and TVP alleging that TRPA's approval of the Project violated the TRPA Compact and Code in various respects.

F.      On November 3, 2008, Plaintiffs submitted a letter to TRPA requesting that, pursuant to TRPA Rules of Procedure 9.2, TRPA initiate an investigation of coverage on the site. Plaintiffs' letter attached various documents that, in Plaintiffs' view, support its contention that coverage on the site had increased by approximately 95,676 square feet between 1984 and 2001.

G.      In response to Plaintiffs' request, TRPA commenced an investigation regarding the amount of coverage legally existing on the Project site. On November 24, 2008, TRPA issued a letter to TVP disclosing that TRPA had commenced a coverage investigation. The letter stated TRPA had placed a "hold" on the Project permit pending conclusion of the investigation.

H.      On December 18, 2008, Plaintiffs filed a First Amended Complaint including a claim that TRPA recognized too much coverage on the Project site when it approved the Project in July 2008.

I.      In response to TRPA's investigation, TVP submitted to TRPA various documents that, in TVP's view, support the proposition that the TRPA Governing Board's recognition of 174,324 square feet of coverage was proper.

J.      TRPA staff asserts that in preparing the administrative record for this Action, they located a 1980 CTRPA Permit file for the Project site, which had been in TRPA's files but which had been misfiled. Plaintiffs disagree with TRPA's assertion.

K.      The 1980 Permit authorized the operation of 25 campsites. Plaintiffs contend, and TVP and TRPA deny that the 1980 Permit also limited coverage on the site to 81,581.7 sf.

L.      Plaintiffs contend that TRPA should rescind TVP's permit and that any future recognition of coverage existing on the site should be limited to the 81,581.7 sf that Plaintiffs contend was permitted by CTRPA in 1980, or to the 81,691 sf Bailey Coefficient of 30%. Plaintiffs also contend that the TRPA violated the Tahoe Regional Planning Compact and the Tahoe Regional Plan, and failed and refused to provide appropriate protection to the sensitive environment of the Lake Tahoe Basin in a variety of other ways with respect to the issuance of the TVP permit. TVP disputes these contentions.

M.      TVP contends that the 174,324 sf of existing Land Coverage recognized by TRPA when it issued the permit was supported by substantial evidence and that Plaintiffs'

Case 2:08-cv-02447-JAM-GGH   Document 107   Filed 03/22/11   Page 11 of 40

allegations relating to coverage are procedurally barred. TVP further contends that Plaintiffs' other contentions are similarly without merit and/or procedurally barred. The Plaintiffs dispute TVP's contentions.

      N.     As of the date of the signing of this agreement, the TRPA Executive Director has not issued a Notice of Violation and the TRPA Governing Board had not taken action with respect to the results of the investigation of the coverage on the site.

      O.     The Parties desire to resolve their dispute regarding the amount of legally existing coverage on the Project site, along with all other disputes concerning the Project.

## IV.    AGREEMENT

NOW THEREFORE, for valuable consideration, the Parties agree as follows:

A. Recitals.

The above recitals are true and are hereby incorporated by reference as part of this Agreement.

B. TVP, TRPA and Plaintiffs agree as follows:

      1.     TVP shall propose and TRPA shall grant:

          a.     An amendment to the TRPA permit for the TVP Project to limit the recognized existing Land Coverage for the Project site from 174,324 sf to 125,000 sf, as a compromise of the disputed claims in this litigation.

          b.     An amendment to the TRPA permit for the TVP Project to remove the requirement that the six affordable units associated with the Project be built on-site and substitute a requirement that all affordable units associated with the Revised Project be provided within the existing housing stock.

          c.     An amendment to the TRPA permit for the TVP Project requiring TVP to submit new site plans to TRPA within eighteen (18) months of the Effective Date of this Agreement without on-site affordable housing units, with affordable housing units provided within the existing housing stock, consistent with the revised coverage number approved for the Project and other applicable provisions of the Code, and consistent with TVP's other commitments set forth in this agreement regarding the revised site plan as set forth in paragraph IV.D.1-3.

          d.     TRPA and the Plaintiffs disagree whether the above described amendments to the TRPA permit for the TVP Project require action by the TRPA Governing Board. In order to promote settlement in this case, TRPA agrees that this Agreement and the above described permit amendments will be considered for approval by

the TRPA Governing Board and that TRPA will use its best efforts to consider these amendments at a meeting held in March of 2010 in the north shore area of Lake Tahoe.

e. TRPA shall send to Plaintiffs and TVP, through its legal counsel, a public hearing notice for all actions relating to the Project that require a public hearing before the Advisory Planning Commission or Governing Board. Notice shall also be provided to the individuals listed in Paragraph E.16 of this Agreement.

2. Plaintiffs, TVP and TRPA understand and agree that TRPA's approval of the reduced coverage number discussed above will be implemented by amending the existing TRPA permit for the TVP Project, and that amendment will be a final decision for purposes of judicial review and binding on any and all future owners of the Project. TVP warrants that it has the authority of all persons and entities with a known ownership interest in the property to enter into this agreement and to record it as an obligation that runs with the land, and to act on their behalf with respect to the Permit including authority to seek amendment of the permit for the Project. All Parties agree that they will not seek judicial review of the TRPA Permit amendments for the TVP Project if they are consistent with the terms of this Agreement.

3. Plaintiffs, TVP and TRPA understand and agree that TRPA will adjust the original conditions of approval and mitigation required for the Project in accordance with its factual review and findings with respect to the Project. Plaintiffs, TVP and TRPA understand and agree that the County of Placer may make similar modifications to its conditions of approval and mitigation measures for the Project. Plaintiffs acknowledge that adjustments may include a reduction in the number of affordable housing units required to be provided in conjunction with the Revised Project.

4. All Parties understand and agree that this Agreement is contingent on TRPA amending the TRPA permit for the TVP Project to require that the affordable units associated with the Project be provided within the existing housing stock, to adjust the recognized coverage for the Project as set forth above, and the sixty (60) day period for challenging the TRPA permit amendment running without a legal challenge being filed. All Parties understand and agree that this Agreement is further contingent on the County amending the County permit for the TVP Project to require that the affordable units associated with the Project be provided within the existing housing stock as set forth above and the ninety (90) day period for challenging the County permit amendment running without a legal challenge being filed. The Effective Date for this Agreement is the date when the time period for seeking judicial review of the TVP Permit amendments approved

by TRPA and the County have run without a legal challenge being filed, whichever date is later.

    C.   <u>TVP, the County and Plaintiffs agree as follows:</u>

    1.     Within twenty (20) days of the date of the last signature on this Agreement, TVP shall submit an application to the County to amend Condition of Approval No. 74 of the permit for the Project to remove the requirement that the affordable units associated with the Project be built on-site and substitute an equivalency proposal that requires all affordable units associated with the Revised Project be provided within the existing housing stock.

    2.     TVP and County agree to work together in good faith to expedite the processing of the affordable housing amendment to the County permit for the TVP Project and to complete such processing within 120 days of receipt of TVP's complete application to amend the permit. If the County determines that TVP's initial application is not complete, TVP will provide any information necessary to complete its application within 10 business days of being notified by the County that additional information is required.

    3.     TVP, the County and Plaintiffs understand and agree that TVP will submit new site plans to the County within eighteen (18) months of the Effective Date of this Agreement consistent with any revision to Condition of Approval No. 74 and the revised coverage number approved by TRPA for the Project.

    4.     Plaintiffs, TVP and TRPA understand and agree that County may, upon application by TVP, extend the time for TVP's current permit to allow TVP to submit a modified site plan consistent with the terms of this Agreement and further allow reasonable time for completion of the Revised Project consistent with this Agreement. Plaintiffs agree not to oppose this extension of time or any additional extensions sought by TVP relating to the Project, but Plaintiffs' representatives listed in Paragraph E.16 shall receive written notification of any additional extensions.

    5.     Plaintiffs, TVP and the County understand and agree that the County will adjust the original conditions of approval and mitigation required for the Project in accordance with its factual review and findings with respect to the Revised Project. Plaintiffs, TVP and the County understand and agree that the TRPA may make similar modifications to its conditions of approval and mitigation measures for the Project, but Plaintiffs' representatives listed in Paragraph E.16 shall receive written notification of any modifications to its conditions of approval and mitigation measures.

6. All Parties understand and acknowledge that, in the context of processing amendments to the Project, the County cannot guarantee the ultimate outcome of any public hearings before the County Planning Commission, Board of Supervisors or other public bodies of the County, nor prevent any opposition thereto by members of the public or other agencies affected by or interested in the Project. The Parties further understand and acknowledge that land use regulations involve the exercise of the County's police power and, at the time of executing this Agreement, it is settled California law that government may not contract away its right to exercise its police power in the future. (*Avco Community Developers Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 800 (1976); *City of Glendale v. Superior Court* (1993) 18 Cal.App.4th 1768.) The Parties further understand and acknowledge that the approval of the Project may be subject to procedural or substantive obligations under the California Environmental Quality Act ("CEQA") (Pub. Resources Code, §§ 21000 et seq.), the California Code of Regulations, title 14, Section 15000 et seq. ("CEQA Guidelines"), the State Planning and Zoning Law, or other laws potentially applicable to such approvals; nothing in this Agreement is intended to constrain the County's consideration of the Project in light of information obtained or developed pursuant to these laws; and the County retains the discretion to approve, conditionally approve, or deny the Project in light of such information. Subject to the foregoing, County, to the extent allowed by law, agrees to diligently process any and all amendments to the Project, including any necessary environmental actions, without unnecessary delay. The County shall send notice to Plaintiffs and TVP, through their respective legal counsel, a public hearing notice for all actions relating to the Project that require a public hearing before the County Planning Commission, Zoning Administrator, or the Board of Supervisors.

7. All Parties understand and agree that this Agreement is contingent on the County amending the permit for the TVP Project to modify Condition of Approval No. 74 as set forth above and the ninety (90) day period for challenging the permit amendment running without a legal challenge being filed. All Parties understand and agree that this Agreement is further contingent on TRPA amending the permit for the TVP Project to require that the affordable units associated with the Project be provided within the existing housing stock and adjust the recognized coverage for the Project as set forth above and the sixty (60) day period for challenging the permit amendment running without a legal challenge being filed. The Effective Date for this Agreement is the date when the time

period for seeking judicial review of the TVP Permit amendment approved by TRPA and the County has run without a legal challenge being filed, whichever date is later.

    D. <u>TVP and Plaintiffs agree as follows</u>:

        1.    <u>Approval</u>.

Plaintiffs and TVP further agree that their approvals of this Agreement are contingent on all Parties executing this Agreement without revision(s) on or before April 15, 2010.

        2.    <u>Land Coverage</u>.

Although the Plaintiffs and TVP dispute the revised Land Coverage amount discussed above in paragraph IV.B.1 of this Agreement, the Plaintiffs and TVP agree as follows in order to resolve their differences concerning coverage on the Project site, and as a means to reach a compromise of the litigation:

        a.    The Project site's base coverage is the Bailey Coefficient of 30% of the Project site, or 81,691 sf.

        b.    TVP shall acquire and retire additional coverage reflecting the extent to which the Revised Project includes coverage in excess of the Project site's Bailey Coefficient, up to the amount recognized as legally existing by the TRPA. Plaintiffs and TVP acknowledge and agree that TVP may acquire and retire this coverage from separate parcels within the Agate Bay Hydrologic Transfer Area. The difference between the base coverage (81,691 sf) and the revised existing coverage recognized by the Parties pursuant to this Agreement (125,000 sf) is 43,009 sf. With respect to this 43,009 sf increment of coverage, if the Revised Project proposes coverage in excess of the Bailey Coefficient, and if such amount of coverage is approved by TRPA, TVP may use, as if legally existing on-site, up to 43,009 sf of coverage over the base allowable provided TVP acquires and retires an equal amount of existing or base allowable coverage from any land capability class within the Agate Bay Hydrologic Transfer Area. Any coverage retired pursuant to this paragraph shall be retired permanently in accordance with a deed restriction or any applicable requirements of the Compact and Code. TVP shall acquire and retire any portion of this increment of coverage above the base allowable coverage of 81,691 sf before commencing Physical Construction Activities associated with any phase of the Project that will result in permanent land coverage in excess of 81,691 sf. The Parties acknowledge and agree that TVP will not be required to purchase or retire coverage until it commences Physical Construction Activities on a phase of the Revised Project that will permanently cover land on the Project site above the base allowable coverage of 81,691 sf. The

obligation to acquire and retire this increment of coverage is intended to, and shall, run with the land, such that the obligation shall apply to any subsequent owner or developer of the Revised Project or any future project(s).

        c.      Under the Compact and Code, a landowner in the Tahoe Vista Community Plan area may acquire and transfer additional coverage, over base or TRPA-recognized existing coverage, up to 50% of the Project site. In accordance with the Compact and Code, as of the Effective Date, TVP may, at its discretion and to the extent required for the Revised Project, acquire and transfer to the site coverage in an amount equal to the difference between 125,000 sf, and 50% of the Project area, or 136,151 sf. Nothing in this Agreement is intended to affect the acquisition and transfer of additional coverage authorized by the Compact and Code, and in accordance with all applicable requirements of the Compact and Code, as of the Effective Date.

        3.      Revised Site Plan.

        The site plan that TVP shall submit to TRPA within 18 months from the approval of the permit amendment discussed in paragraph IV.B.1 shall include the following elements:

        a.      *Coverage.* TVP's application for the Revised Project shall include a new site plan that is based on, and consistent with, the land coverage amounts set forth in this Agreement. The Revised Project shall reflect the revised total amount of coverage existing or that can be transferred onto the site consistent with this Agreement. In any event, the Revised Project shall provide that land coverage shall not exceed fifty (50) percent of the total Project site area.

        b.      *Affordable housing.* The Project, as approved by TRPA and the County, included on-site affordable housing. The Revised Project shall not include on-site affordable housing. Within twenty (20) days of the date of the last signature on this Agreement, TVP shall propose to the County and TRPA that the affordable housing approved as part of the original Project instead be provided through TVP's purchasing and deed restricting as affordable existing residential units within the County's housing stock or other terms satisfactory to the County, TRPA and TVP. In the event TVP encounters obstacles with respect to not locating affordable housing on the Project site, TVP shall notify Plaintiffs and request their assistance in an effort to persuade the County and/or TRPA that affordable housing should not be located on the Project site. The Parties acknowledge and agree that removing the Project's on-site affordable housing and accomplishing the provision of affordable housing through the purchasing and deed restricting of residential units within the County's existing housing stock is subject to

review and approval by the County and TRPA. In the event that TRPA or the County does not approve the Revised Project to reflect the substitution of affordable housing within the existing housing stock for on-site affordable housing this Agreement will not take effect.

      c.    *Sound wall.* The Revised Project application shall propose to eliminate the sound wall that was required as mitigation for the approved Project's affordable housing. The Parties understand that the Project, as approved by TRPA and the County, included a sound wall. TVP shall use its best efforts to avoid including a sound wall in the Revised Project, including working with Plaintiffs if any obstacles to the removal of the soundwall as part of the Project are presented by the County or TRPA. In the event that TRPA or the County will not approve the Revised Project without the inclusion of a sound wall, TVP may proceed with a Revised Project without eliminating the sound wall.

      d.    *Fire Access.* TVP shall use its best efforts to avoid the need for a fire road extending northward from the northeast corner of the Project site. If a fire road extending northward from the northeast corner of the Project site cannot be avoided, then the eastern edge of the fire road shall be at least of 20 feet from the Haas property line and landscaped per County requirements. The road shall be gated and used solely for emergency vehicles and for pedestrian and bicycle use.

      e.    *Gates/Garages and Carports.* The Revised Project shall not include gated roads (except as required for the limited access fire road(s)), and no gates fronting Highway 28. The Revised Project shall not include free standing garages and/or carports.

      f.    *Design.* The Revised Project shall be designed in a manner intended to be consistent with the style generally understood to be "Old Tahoe" style. TVP will utilize a design facilitation process that will allow Plaintiffs to provide input and comments on the design of the Revised Project. The Parties recognize and agree that final design decisions are within TVP's discretion, but must comply with TRPA and County code requirements.

      g.    *Existing conditions of approval.* TVP shall propose, in its application for the Revised Project that the conditions of approval adopted by the County and TRPA in 2008, shall apply to the Revised Project, including height and limiting the number of market rate units to 39 or less, except that conditions of approval will be modified consistent with the terms of this Agreement. The Parties further recognize and agree the conditions of approval and mitigation measures adopted by the County and TRPA in 2008 shall be adjusted proportionately so that they reflect the revised size of the Project

(e.g., fees to be paid based on the number of units may be adjusted and reduced to reflect the number of units in the Revised Project). Any additional future permit revisions are limited to changes that result in reduced environmental impacts than the originally approved Project.

        h.    *Commencement of construction.* Physical Construction Activities shall not proceed unless and until TVP submits, and TRPA and the County approve, the plan revisions for the Revised Project described in this paragraph; and thereafter shall proceed consistent with paragraph D.1.b. of this Agreement.

        4.    Other TVP commitments.

        TVP shall adhere to the following additional commitments with respect to the Revised Project.

        a.    *Bikes/shuttle van/bus passes.* TVP shall provide at least ten (10) bikes for use by guests of the Project. TVP shall provide one (1) shuttle van for local trips for residents and guests of the Project. TVP shall provide its customers with Tahoe Area Rapid Transit bus passes for use by residents and guests of the Project.

        b.    *No Boat and Trailer Parking*: The Revised Project shall not contain boat or boat-trailer storage or parking.

        c.    *Community meeting.* TVP shall hold at least one community meeting to solicit comments from interested members of the public before seeking administrative approval for the Revised Project from the County or TRPA. TVP shall provide Plaintiffs at least thirty (30) days notice before any such meeting, and shall publish at least one (1) public notice of the meeting in the Sierra Sun at least twenty (20) days prior to the meeting. TVP will provide written response to all written comments regarding the Revised Project received five business days prior to or at the Community meeting.

        5.    Plaintiffs' commitments.

        In consideration of the commitments by TVP set forth above, Plaintiffs shall comply with the commitments set forth in this paragraph.

        a.    *TRPA Approvals and Coverage.* If this Agreement is approved by the Governing Board Plaintiffs shall support any future permit modification(s) for the Project required to conform the Project to this Agreement. Plaintiffs shall support and cooperate with TVP in TVP's efforts to purchase coverage to satisfy the conditions of this Agreement and will not directly or indirectly obstruct TVP's efforts to purchase coverage consistent with the terms of this Agreement.

b.   *Dismissal.*  Plaintiffs shall file a dismissal of, or enter into a stipulation dismissing, or otherwise file a motion for dismissal of, the entire Action with prejudice not more than ten (10) business days after the Effective Date.

c.   *Future challenges.*  Plaintiffs waive any and all rights to bring any future challenge relating in any way to the Project or Revised Project in administrative or legal proceedings, with the exception of alleging a breach of the Settlement Agreement or a failure to comply with any and all written contractual agreement(s) between some or all of the Parties relating to the Project or Revised Project. Plaintiffs understand, acknowledge and agree that the Agreement will constitute a complete and sufficient defense barring any such claims included in this paragraph, and that the Defendant Parties will be relying upon the Settlement Agreement as a complete defense.

E.   Under parties agree as follows:

1.   Support for this Agreement.

All parties shall support the County and Governing Board's approval of this Agreement and the permit amendments for the Project and Revised Project consistent with Agreement. All parties shall have the right to express their views, publicly and to the TRPA Governing Board, of the facts of this matter. However, all Parties agree not to suggest or advocate that the County or Governing Board reject or disapprove this Agreement or the permit amendments for the Project and Revised Project consistent with Agreement.

2.   Land Coverage.

All Parties acknowledge and agree that existing coverage recognized by the Parties pursuant to this Agreement (125,000 sf) will be the recognized existing coverage at the Project site. TVP, TRPA and the County agree they will not advocate for more or less recognized existing coverage at the Project site for the Revised Project or any future projects. Plaintiffs and TVP agree they will not advocate for more or less recognized existing coverage at the Project site for the Revised Project. If TVP in the future requests to use, transfer, or bank such coverage in connection with a different project or other application, the Plaintiffs will not oppose such requests provided that TVP has complied with the retirement of coverage terms of this Agreement.

3.   Additional Project Approvals.

All Parties acknowledge and agree that no further approvals are required for the Revised Project based on this Agreement other than any approvals that are currently required under existing law, or those expressly required pursuant to this Agreement.

4.    Run with the Land.

This Agreement shall run with the land and be binding upon all present and future owners of the Project site, and shall exist through the duration of this Agreement or until such time as the terms of this Agreement have been fully fulfilled or this Agreement has been terminated by the mutual agreement of the Parties. Should the County or TRPA permits for the TVP Project or Revised Project expire by operation of law under Compact Article VI(p) or through voluntary relinquishment or any other means, all Parties understand and agree that the 125,000 sf of "existing" Land Coverage for the Project site established pursuant to this Agreement will remain for any future project(s). The terms of this Agreement shall be binding on and inure to the benefit of the Parties hereto and their successors, assigns, heirs, and representatives. TVP shall record a notice of this Agreement and provide an executed copy of this Agreement to any prospective purchaser(s) of the Project, the Project Site, the Permit for the Project, the Permit for the Revised Project, or of TVP itself. This Agreement is contingent on TVP providing a copy of the recorded notice of this Agreement to Plaintiffs as provided in Paragraph IV (D) (14) of this Agreement.

5.    Term and Termination.

This Agreement shall continue in effect until the earlier of the following dates: (a) the first date when all of the Parties' obligations under this Agreement have been satisfied; or (b) all parties agree in writing to terminate this Agreement. At that time, the owner of the Project site shall execute and record a withdrawal of the Notice of Agreement. The owner of the Project site shall provide Plaintiffs with notice 30-days in advance of recording the withdrawal of the Notice of Agreement as provided in Paragraph IV (E) (16) of this Agreement.

6.    No Admissions.

This Agreement is entered into in compromise of disputed claims, the existence of any liability for which is expressly denied. All Parties agree that this Agreement shall not be deemed or construed for any purpose as an admission of liability or responsibility for or participation in any unlawful or wrongful act at any time by any Party hereto or any other person or entity, and shall have no precedential value for any other case or circumstance. The Parties understand and agree that nothing in this Agreement, or in the execution of this Agreement, shall constitute or be construed as an admission by any party of any inadequacy or impropriety in connection with the allegations contained in the pending lawsuit, including but not limited to any violations of the Tahoe Regional Planning Compact, TRPA Regulations, the Code, County planning documents, the County's zoning ordinance, NEPA,

CEQA, or other laws, plans or regulations governing the use of the Project site. It is agreed that all statements contained herein and the conduct of any Party in connection with this Agreement shall be inadmissible as evidence under California Evidence Code § 1152(a), except that the statements contained herein shall be admissible in any action to enforce or interpret this Agreement.

7.   No Prior Assignment.

The Parties represent and warrant that they have not sold, assigned, transferred, hypothecated, pledged, encumbered or otherwise disposed of or set over to any person or entity, in whole or in part, voluntarily or involuntarily, any claim, demand, or right covered by this Agreement.

8.   Costs and Fees.

Except as set forth in this agreement, or in any other agreement or condition between some or all of the Parties with respect to the subject matter hereof, each Party shall bear its own attorneys' fees and costs.

9.   Entire Agreement; Modifications; Waiver.

This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements, representations, and understandings of the Parties, with the exception of any and all written contractual agreement(s) between any or all of the Parties relating to the Project and Revised Project. This Agreement may not be amended or modified by the Parties except in a writing executed by all Parties. No waiver of any provision of this Agreement shall be binding unless executed in writing by the Party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

10.   Interpretation.

This Agreement shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Party by reason of the alleged authorship of any provisions. The Parties understand and agree that the general rule that ambiguities are to be construed against the drafter shall not apply to this Agreement. Each Party acknowledges that it is represented by counsel, and has had the benefit of advice from counsel with respect to this Agreement.

11.   Headings.

The headings and numbers used in this Agreement are included for the purpose of convenience of reference only and they shall not be used to explain, limit, or extend the

meaning of any part of the Agreement.

    12.    Severability.

    If any term or provision of this Agreement or the application thereof to any person or circumstance shall be held invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and shall be enforced to the fullest extent permitted by law, unless the exclusion of such term or provision, or the application of such term or provision, would result in such a material change so as to cause completion of the obligations contemplated herein to be unreasonable.

    13.    Governing Law; Venue.

    This Agreement shall be construed under and governed by the laws of the United States and the State of California with venue in United States District Court for the Eastern District of California.

    14.    Specific Performance; Remedies.

    The Parties agree that specific performance is an appropriate remedy for enforcement of this Agreement. The Parties acknowledges and agrees that specific performance is the only appropriate remedy for any breach of this Agreement by TVP, TRPA and the County. Any Party claiming a breach of this Agreement, shall provide the other Parties thirty (30) days' notice before commencing any action to enforce this Agreement and shall meet and confer and attempt to resolve their differences informally before commencing any such action. The prevailing party in any action to enforce this Agreement shall be entitled to their reasonable attorney fees and costs.

    15.    Authority; Warranties.

    Each person signing this Agreement on behalf of a Party hereby represents and warrants that he or she has complete authority to bind that Party to the terms and conditions of this Agreement.

    16.    Execution.

    This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and all of which taken together shall constitute one and the same instrument.

    17.    Notice.

    TVP shall provide Plaintiffs with written notice of the completion of each requirement set forth in this Agreement to be performed by TVP and within ten (10) days of

the completion of such requirement, and such notice shall explain the manner in which TVP complied with each such requirement. Plaintiffs shall provide TVP with written notice of the completion of each requirement set forth in this Agreement to be performed by Plaintiffs within ten (10) days of the completion of such requirement, and such notice shall explain the manner in which Plaintiffs complied with each such requirement. All notices required under this Agreement shall be in writing, and shall be given by both: (1) either personally or by United States First Class mail; and (2) by telephone facsimile or electronic mail (PDF format). Any Party may at any time, by giving ten (10) days' written notice to the other Party, designate any other person or address in substitution of the address to which such notice shall be given. Such notices shall be given to the Parties at their addresses set forth below:

> **For the League to Save Lake Tahoe:**
> Rochelle Nason, Executive Director
> League to Save Lake Tahoe
> 955 Emerald Bay Road
> South Lake Tahoe, CA  96150
> FAX:  (530) 541-5454
> Email: rochelle@keeptahoeblue.org

> **For the Friends of Tahoe Vista:**
> Ellie Waller
> P.O. Box 535
> Tahoe Vista, CA  96148
> Email: tahoellie@yahoo.com

> **For Tahoe Vista Partners, LLC:**
> Tim Wilkens
> Tahoe Vista Partners
> P.O. Box 2490
> Napa, CA  94558
> Email: twilkens@interx.net

> With copies to:
> Whitman F. Manley
> Howard F. Wilkins III
> Remy, Thomas, Moose and Manley, LLP
> 455 Capitol Mall, Suite 210
> Sacramento, CA 95814
> Telephone: (916) 443-2745
> Facsimile: (916) 443-9017
> Email: wmanley@rtmmlaw.com
> Email: cwilkins@rtmmlaw.com

**For Tahoe Regional Planning Agency:**
Tahoe Regional Planning Agency
P.O. BOX 5310
Stateline, Nevada 89448
Telephone: (775) 588-4547
Facsimile: (775) 588-4527

With copies to:
Nicole U. Rinke
Tahoe Regional Planning Agency
P.O. BOX 5310
Stateline, Nevada 89448
Telephone: (775) 588-4547
Facsimile: (775) 588-4527
Email: nrinke@trpa.org

**For County of Placer:**
Michael Johnson, Director
Community Development Resources Agency
3091 County Center Drive
Auburn CA 95603
Telephone: (530) 745-3000
Facsimile: mjohnson@placer.ca.gov

With copies to:
Scott H. Finley
Placer County Counsel's Office
175 Fulweiler Avenue
Auburn, CA 95603
Telephone: (530) 889-4044
Facsimile: (530) 889-4069
Email: sfinley@placer.ca.gov

18.   Waiver; Defenses.

Except as otherwise expressly set forth in this Agreement, each Party, on behalf of
itself and its respective officers, directors, agents, members, insurers and subrogees,
predecessors, successors, affiliated and related entities, and assignors and assignees, and
each of them, hereby releases and forever discharges all other Parties and their respective
officers, directors, agents, insurers and subrogees, predecessors, successors, affiliated and
related entities, assignors and assignees, and each of them, from any and all past, present
and future claims, demands, causes of action, obligations, damages, costs and expenses of
any nature and kind whatsoever, relating to or arising out of, directly or indirectly, the
Claims and the Project, with the exception of alleging a breach of the Settlement
Agreement or a failure to comply with any and all written contractual agreement(s) between

any or all of the Parties relating to the Project. The Parties intend this Agreement to be a full and general release as to subject matters set forth in the Claims, and they hereby mutually, expressly, knowingly and intentionally waive all claims or benefits which they now have, or in the future may have, under the provisions of Section 1542 of the California Civil Code, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Party acknowledges that its attorney-at-law has explained to it the meaning and affect of this statute. Each Party understands fully the statutory language of Civil Code Section 1542 and, with the understanding, each Party nevertheless elects to, and does, assume all risk for claims released under this Agreement heretofore and hereafter arising, known or unknown, and each Party specifically waives any rights it may have under Civil Code Section 1542. Each Party fully understands that if the facts with respect to this Agreement are found hereafter to be other than or different from the facts now believed by it to be true, it expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement shall be and remain effective, notwithstanding such difference in facts.

_RN_     League to Save Lake Tahoe (Initials)
_____     Friends of Tahoe Vista (Initials)
_____     Tahoe Vista Partners, LLC (Initials)
_____     Tahoe Regional Planning Agency (Initials)
_____     County of Placer (Initials)

Each Party hereby agrees never to commence, aid, prosecute or cause or permit to be commenced or prosecuted against the other Party any action or any other proceeding based in whole or in part upon any rights, liens, claims, demands or causes of action of any nature whatsoever waived, released or discharged by this Agreement. This Agreement may be pled as a full and complete defense to any subsequent action or other proceeding involving any person or Party which arises out of, relates to, or has anything to do with, the rights, liens, claims, demands or causes of action waived, released and discharged by this Agreement. The Parties acknowledge that this Agreement is being entered into in settlement and to avoid further dispute, expense or litigation. The Parties agree that neither execution hereof nor performance of any of the provisions of this Agreement shall

any or all of the Parties relating to the Project. The Parties intend this Agreement to be a full and general release as to subject matters set forth in the Claims, and they hereby mutually, expressly, knowingly and intentionally waive all claims or benefits which they now have, or in the future may have, under the provisions of Section 1542 of the California Civil Code, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Party acknowledges that its attorney-at-law has explained to it the meaning and affect of this statute. Each Party understands fully the statutory language of Civil Code Section 1542 and, with the understanding, each Party nevertheless elects to, and does, assume all risk for claims released under this Agreement heretofore and hereafter arising, known or unknown, and each Party specifically waives any rights it may have under Civil Code Section 1542. Each Party fully understands that if the facts with respect to this Agreement are found hereafter to be other than or different from the facts now believed by it to be true, it expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement shall be and remain effective, notwithstanding such difference in facts.

_____   League to Save Lake Tahoe (Initials)
_____   Friends of Tahoe Vista (Initials)
_____   Tahoe Vista Partners, LLC (Initials)
_____   Tahoe Regional Planning Agency (Initials)
_____   County of Placer (Initials)

Each Party hereby agrees never to commence, aid, prosecute or cause or permit to be commenced or prosecuted against the other Party any action or any other proceeding based in whole or in part upon any rights, liens, claims, demands or causes of action of any nature whatsoever waived, released or discharged by this Agreement. This Agreement may be pled as a full and complete defense to any subsequent action or other proceeding involving any person or Party which arises out of, relates to, or has anything to do with, the rights, liens, claims, demands or causes of action waived, released and discharged by this Agreement. The Parties acknowledge that this Agreement is being entered into in settlement and to avoid further dispute, expense or litigation. The Parties agree that neither execution hereof nor performance of any of the provisions of this Agreement shall

any or all of the Parties relating to the Project. The Parties intend this Agreement to be a full and general release as to subject matters set forth in the Claims, and they hereby mutually, expressly, knowingly and intentionally waive all claims or benefits which they now have, or in the future may have, under the provisions of Section 1542 of the California Civil Code, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Party acknowledges that its attorney-at-law has explained to it the meaning and affect of this statute. Each Party understands fully the statutory language of Civil Code Section 1542 and, with the understanding, each Party nevertheless elects to, and does, assume all risk for claims released under this Agreement heretofore and hereafter arising, known or unknown, and each Party specifically waives any rights it may have under Civil Code Section 1542. Each Party fully understands that if the facts with respect to this Agreement are found hereafter to be other than or different from the facts now believed by it to be true, it expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement shall be and remain effective, notwithstanding such difference in facts.



League to Save Lake Tahoe (Initials)
Friends of Tahoe Vista (Initials)
Tahoe Vista Partners, LLC (Initials)
Tahoe Regional Planning Agency (Initials)
County of Placer (Initials)

Each Party hereby agrees never to commence, aid, prosecute or cause or permit to be commenced or prosecuted against the other Party any action or any other proceeding based in whole or in part upon any rights, liens, claims, demands or causes of action of any nature whatsoever waived, released or discharged by this Agreement. This Agreement may be pled as a full and complete defense to any subsequent action or other proceeding involving any person or Party which arises out of, relates to, or has anything to do with, the rights, liens, claims, demands or causes of action waived, released and discharged by this Agreement. The Parties acknowledge that this Agreement is being entered into in settlement and to avoid further dispute, expense or litigation. The Parties agree that neither execution hereof nor performance of any of the provisions of this Agreement shall

any or all of the Parties relating to the Project. The Parties intend this Agreement to be a full and general release as to subject matters set forth in the Claims, and they hereby mutually, expressly, knowingly and intentionally waive all claims or benefits which they now have, or in the future may have, under the provisions of Section 1542 of the California Civil Code, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Party acknowledges that its attorney-at-law has explained to it the meaning and affect of this statute. Each Party understands fully the statutory language of Civil Code Section 1542 and, with the understanding, each Party nevertheless elects to, and does, assume all risk for claims released under this Agreement heretofore and hereafter arising, known or unknown, and each Party specifically waives any rights it may have under Civil Code Section 1542. Each Party fully understands that if the facts with respect to this Agreement are found hereafter to be other than or different from the facts now believed by it to be true, it expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement shall be and remain effective, notwithstanding such difference in facts.



League to Save Lake Tahoe (Initials)
Friends of Tahoe Vista (Initials)
Tahoe Vista Partners, LLC (Initials)
Tahoe Regional Planning Agency (Initials)
County of Placer (Initials)

Each Party hereby agrees never to commence, aid, prosecute or cause or permit to be commenced or prosecuted against the other Party any action or any other proceeding based in whole or in part upon any rights, liens, claims, demands or causes of action of any nature whatsoever waived, released or discharged by this Agreement. This Agreement may be pled as a full and complete defense to any subsequent action or other proceeding involving any person or Party which arises out of, relates to, or has anything to do with, the rights, liens, claims, demands or causes of action waived, released and discharged by this Agreement. The Parties acknowledge that this Agreement is being entered into in settlement and to avoid further dispute, expense or litigation. The Parties agree that neither execution hereof nor performance of any of the provisions of this Agreement shall

constitute or be construed as an admission on the part of either Party of any liability regarding the claims, and nothing herein shall be admissible in any proceeding as an admission of any factual matter, liability or fault against any Party. Each Party agrees to indemnify and save harmless the other Parties from any loss incurred directly or indirectly by reason of the falsity or inaccuracy of any representation made herein by it.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date hereinafter written.

April __, 2010                          FRIENDS OF TAHOE VISTA

By:_____
                                        Ellie Waller

April ___, 2010                         LEAGUE TO SAVE LAKE TAHOE

By:_____
                                        Rochelle Nason, Executive Director

April ___, 2010                         TAHOE VISTA PARTNERS, LLC

By:_____
                                        Tim Wilkens, President of Great Western
                                        Holdings, Inc.

April ___, 2010                         TAHOE VISTA PARTNERS, LLC

By:_____
                                        Tim Wilkens, an Individual

League to Save Lake Tahoe v. Tahoe Regional Planning Agency, E.D.Cal. No. 2:08-CV-2447 JAM/KJM
Settlement Agreement
Page 20

constitute or be construed as an admission on the part of either Party of any liability regarding the claims, and nothing herein shall be admissible in any proceeding as an admission of any factual matter, liability or fault against any Party. Each Party agrees to indemnify and save harmless the other Parties from any loss incurred directly or indirectly by reason of the falsity or inaccuracy of any representation made herein by it.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date hereinafter written.

April ___, 2010                          FRIENDS OF TAHOE VISTA


By:_____
                Ellie Waller

April 8th, 2010                          LEAGUE TO SAVE LAKE TAHOE


By:_____
                Rochelle Nason, Executive Director

April ___, 2010                          TAHOE VISTA PARTNERS, LLC


By:_____
                Tim Wilkens, President of Great Western
                Holdings, Inc.

April ___, 2010                          TAHOE VISTA PARTNERS, LLC


By:_____
                Tim Wilkens, an Individual

constitute or be construed as an admission on the part of either Party of any liability
regarding the claims, and nothing herein shall be admissible in any proceeding as an
admission of any factual matter, liability or fault against any Party. Each Party agrees to
indemnify and save harmless the other Parties from any loss incurred directly or indirectly
by reason of the falsity or inaccuracy of any representation made herein by it.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as
of the date hereinafter written.

April ___, 2010                          FRIENDS OF TAHOE VISTA


By:_____
       Ellie Waller

April ___, 2010                          LEAGUE TO SAVE LAKE TAHOE


By:_____
       Rochelle Nason, Executive Director

April __1__, 2010                        TAHOE VISTA PARTNERS, LLC


By:_____
       Tim Wilkens, President of Great Western
       Holdings, Inc.

April __1__, 2010                        TAHOE VISTA PARTNERS, LLC


By:_____
       Tim Wilkens, an Individual

April 7th, 2010                    TAHOE VISTA PARTNERS, LLC

                                   By: _____
                                        Joe Lanza, an Individual

April 7th, 2010                    TAHOE VISTA PARTNERS, LLC

                                   By: _____
                                        Rafe Miller, an Individual

April ___, 2010                    TAHOE REGIONAL PLANNING AGENCY

                                   By: _____
                                        Joanne Marchetta, Executive Director

April ___, 2010                    PLACER COUNTY BOARD OF SUPERVISORS

                                   By: _____
                                        Kirk Uhler, Chair

**Approved as to form**:

April ___, 2010                    KENYON YEATES LLP

                                   By: _____
                                        Bill Yeates
                                        Attorneys for Plaintiff
                                        Friends of Tahoe Vista

League to Save Lake Tahoe v. Tahoe Regional Planning Agency, E.D.Cal. No. 2:08-CV-2447 JAM/KJM
Settlement Agreement
Page 21

April ___, 2010                     TAHOE VISTA PARTNERS, LLC


By:_____
        Joe Lanza, an Individual

April ___, 2010                     TAHOE VISTA PARTNERS, LLC


By:_____
        Rafe Miller, an Individual

April  7 , 2010                     TAHOE REGIONAL PLANNING AGENCY


By:_____
        Joanne Marchetta, Executive Director

April ___, 2010                     PLACER COUNTY BOARD OF SUPERVISORS




By:_____
        Kirk Uhler, Chair

**Approved as to form**:

April ___, 2010                     KENYON YEATES LLP



By:_____
        Bill Yeates
        Attorneys for Plaintiff
        Friends of Tahoe Vista

April ___, 2010               TAHOE VISTA PARTNERS, LLC


By:_____
    Joe Lanza, an Individual

April ___, 2010               TAHOE VISTA PARTNERS, LLC


By:_____
    Rafe Miller, an Individual

April ___, 2010               TAHOE REGIONAL PLANNING AGENCY


By:_____
    Joanne Marchetta, Executive Director

April _6_, 2010               PLACER COUNTY BOARD OF SUPERVISORS


By:_____
    Kirk Uhler, Chair

**Approved as to form:**

April ___, 2010               KENYON YEATES LLP


By:_____
    Bill Yeates
    Attorneys for Plaintiff
    Friends of Tahoe Vista

April ___, 2010                    TAHOE VISTA PARTNERS, LLC


                                   By:_____
                                         Joe Lanza, an Individual

April ___, 2010                    TAHOE VISTA PARTNERS, LLC


                                   By:_____
                                         Rafe Miller, an Individual

April ___, 2010                    TAHOE REGIONAL PLANNING AGENCY


                                   By:_____
                                         Joanne Marchetta, Executive Director

April ___, 2010                    PLACER COUNTY BOARD OF SUPERVISORS


                                   By:_____
                                         Kirk Uhler, Chair

**Approved as to form**:

April **8**, 2010                  KENYON YEATES LLP


                                   By:_____
                                         Bill Yeates
                                         Attorneys for Plaintiff
                                         Friends of Tahoe Vista

_____

League to Save Lake Tahoe v. Tahoe Regional Planning Agency, E.D.Cal. No. 2:08-CV-2447 JAM/KJM
Settlement Agreement
Page 21

April 8, 2010

LOZEAU DRURY LLP

By:_____
Richard T. Drury
Attorneys for Plaintiff
League to Save Lake Tahoe

April ___, 2010

LEAGUE TO SAVE LAKE TAHOE

By:_____
Rochelle Nason

April ___, 2010

REMY THOMAS MOOSE & MANLEY LLP

By:_____
Whitman F. Manley
Howard F. Wilkins III
Attorneys for Defendant,
Tahoe Vista Partners LLC

April ___, 2010

TAHOE REGIONAL PLANNING AGENCY

By:_____
Nicole Rinke, General Counsel
John L. Marshall
Attorneys for Defendant
Tahoe Regional Planning Agency

April ___, 2010

PLACER COUNTY BOARD OF SUPERVISORS

By:_____
Scott Finley
Attorneys for Defendant
Placer County Board of Supervisors

April ___, 2010          LOZEAU DRURY LLP


                         By:_____
                            Richard T. Drury
                            Attorneys for Plaintiff
                            League to Save Lake Tahoe

April 15th, 2010          LEAGUE TO SAVE LAKE TAHOE


                         By:_____
                            Rochelle Nason

April ___, 2010          REMY THOMAS MOOSE & MANLEY LLP


                         By:_____
                            Whitman F. Manley
                            Howard F. Wilkins III
                            Attorneys for Defendant,
                            Tahoe Vista Partners LLC

April ___, 2010          TAHOE REGIONAL PLANNING AGENCY


                         By:_____
                            Nicole Rinke, General Counsel
                            John L. Marshall
                            Attorneys for Defendant
                            Tahoe Regional Planning Agency

April ___, 2010          PLACER COUNTY BOARD OF SUPERVISORS


                         By:_____
                            Scott Finley
                            Attorneys for Defendant
                            Placer County Board of Supervisors

April ___, 2010     LOZEAU DRURY LLP


By:_____
        Richard T. Drury
        Attorneys for Plaintiff
        League to Save Lake Tahoe

April ___, 2010     LEAGUE TO SAVE LAKE TAHOE


By:_____
        Rochelle Nason

April _8_, 2010     REMY THOMAS MOOSE & MANLEY LLP


By:_____
        Whitman F. Manley
        Howard F. Wilkins III
        Attorneys for Defendant,
        Tahoe Vista Partners LLC

April ___, 2010     TAHOE REGIONAL PLANNING AGENCY


By:_____
        Nicole Rinke, General Counsel
        John L. Marshall
        Attorneys for Defendant
        Tahoe Regional Planning Agency

April ___, 2010     PLACER COUNTY BOARD OF SUPERVISORS


By:_____
        Scott Finley
        Attorneys for Defendant
        Placer County Board of Supervisors

League to Save Lake Tahoe v. Tahoe Regional Planning Agency, E.D.Cal. No. 2:08-CV-2447 JAM/KJM
Settlement Agreement
Page 22

April ____, 2010                    LOZEAU DRURY LLP


By:_____
          Richard T. Drury
          Attorneys for Plaintiff
          League to Save Lake Tahoe

April ____, 2010                    LEAGUE TO SAVE LAKE TAHOE


By:_____
          Rochelle Nason

April ____, 2010                    REMY THOMAS MOOSE & MANLEY LLP


By:_____
          Whitman F. Manley
          Howard F. Wilkins III
          Attorneys for Defendant,
          Tahoe Vista Partners LLC

April ____, 2010                    TAHOE REGIONAL PLANNING AGENCY


By:_____
          Nicole Rinke, General Counsel
          John L. Marshall
          Attorneys for Defendant
          Tahoe Regional Planning Agency

April ____, 2010                    PLACER COUNTY BOARD OF SUPERVISORS


By:_____
          Scott Finley
          Attorneys for Defendant
          Placer County Board of Supervisors

April ___, 2010          LOZEAU DRURY LLP


By:_____
                Richard T. Drury
                Attorneys for Plaintiff
                League to Save Lake Tahoe

April ___, 2010          LEAGUE TO SAVE LAKE TAHOE


By:_____
                Rochelle Nason

April ___, 2010          REMY THOMAS MOOSE & MANLEY LLP


By:_____
                Whitman F. Manley
                Howard F. Wilkins III
                Attorneys for Defendant,
                Tahoe Vista Partners LLC

April ___, 2010          TAHOE REGIONAL PLANNING AGENCY


By:_____
                Nicole Rinke, General Counsel
                John L. Marshall
                Attorneys for Defendant
                Tahoe Regional Planning Agency

April _6_, 2010         PLACER COUNTY BOARD OF SUPERVISORS


By:_____
                Scott Finley
                Attorneys for Defendant
                Placer County Board of Supervisors